UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ANN I. TAYLOR, et al., ) | Case No. 1:08 CV 1927 |
| ) | |
| Plaintiffs, ) | JUDGE DONALD C. NUGENT |
| vs. ) | |
| ) | MEMORANDUM OPINION |
| KEYCORP, et al., ) | AND ORDER |
| ) | |
| Defendants. ) | |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF #23).  For the reasons that follow, Defendants' Motion to Dismiss is denied.

## PROCEDURAL BACKGROUND

Plaintiff Ann I. Taylor filed this action on behalf of herself and a class of similarly situated participants and beneficiaries of the Keycorp 401(k) Savings Plan (the "Plan") on August 11, 2008.  Plaintiff brings this class action pursuant to §§ 409, 502 of the Employee Income Security Act ("ERISA"), 29 U.S.C. §§ 1109, 1132 against Defendants, fiduciaries of the Plan. The Defendants are KeyCorp, an Ohio bank-based financial services company and the named Plan Sponsor; Cathleen M. Fyffe, a vice president of KeyCorp and a Plan fiduciary during the relevant time period; Compensation and Organization Committee of the Board of Directors (the "Committee") who managed and administered the Plan and its assets and acted as a fiduciary of the Plan; Carol A. Cartwright, Alexander M. Cutler (Chair), and Edward P. Campbell (Chair elect) (the "Committee Defendants") are members of the Committee; Edward P. Campbell, H. James Dallas, Lauralee E. Martin, Bill R. Sanford, Ralph Alvarez, William G.

Bares, Carol A. Cartwright, Thomas C. Stevens, Alexander M. Cutler, Eduardo R. Menasce, Henry L. Meyer, III and Peter G. Ten Eyck, II (the "Director Defendants") were members of the Board of Directors of KeyCorp; and John Does 1-20, the individual members of the Committee and any other committees which administered the Plan. (Complaint, ¶¶18-26).

The Complaint asserted six causes of action including Failure to Prudently Manage the Plan's Assets (Count 1); Failure to Inform Plan Participants About the True Risk and Return Characteristics of KeyCorp Stock (Count 2); Failure to Adequately Monitor Other Fiduciaries and Provide them with Accurate Information (Count 3); Breach of Duty to Avoid Conflicts of Interest (Count 4); Breach of Fiduciary Duty by the Committee Defendants Causing the Plan to Invest in Victory Funds (Count 5); and, Prohibited Transaction Violations (Count 6). Plaintiff seeks declaratory relief and damages, costs and attorneys' fees.

On September 26, 2008, Plaintiff Ann Taylor and Plaintiff Bruce Wildes in Case No. 1:08 CV 2200, moved to consolidate their actions against KeyCorp and certain officers and directors of the Company and fiduciaries of the Plan. (ECF #8). Plaintiffs argued that both of the ERISA actions were filed on behalf of plaintiffs individually and a proposed class of all persons who were participants in or beneficiaries of the Plan during a defined period. In both complaints, Plaintiffs allege that Defendants breached their fiduciary duties to Plaintiffs and other members of the proposed class in connection with the Plan's investment in KeyCorp common stock, including, *inter alia*, by failing to monitor properly KeyCorp stock as a Plan retirement investment alternative and failing to advise plaintiffs and other members of the proposed class that KeyCorp stock was an imprudent retirement investment alternative, due to KeyCorp's inappropriate business practices.  Both ERISA actions seek relief pursuant to

Sections 409 and 502(a)(2) and (3) of ERISA, 29 U.S.C. §§ 409 and 1132(a)(2) and (3), on behalf of the Plan, alleging, *inter alia*, that defendants are responsible for restoring losses sustained by the Plan as a result of defendants' breaches of their fiduciary duties.

The Court granted Plaintiffs' Motion to Consolidate on January 7, 2009, ordered that the cases be consolidated under Case No. 1:08 CV 1927 and directed Plaintiffs to file a consolidated complaint. (ECF #19).

Thereafter, Plaintiffs Ann I. Taylor and Elaine Klamert filed their consolidated class action complaint for violations of ERISA ("Consolidated Complaint") on January 16, 2009. (ECF #22) The Consolidated Complaint defines the proposed class as "[a]ll persons who were participants in or beneficiaries of the Plan whose Plan accounts included investments in KeyCorp common stock . . . at any time between December 31, 2006 and the present...." (ECF #22 at ¶40).

The defendants named in the Consolidated Complaint are KeyCorp; Kathleen Egan, an alleged Plan Administrator who signed Plan filings during the Class Period; the Trust Oversight Committee (the "Committee"), a Plan fiduciary; Henry L. Meyer, III, KeyCorp president and CEO and Chairman of the Board and member of the Committee and a Plan fiduciary; Thomas C. Stevens, Vice Chair and Chief Administrative Officer of KeyCorp, Committee member and Plan fiduciary; Jeffrey B. Weeden, Senior Executive Vice President and CFO of KeyCorp and Chairman and member of the Committee and Plan fiduciary; Thomas W. Bunn, Vice Chair of KeyCorp and member of the Committee and Plan fiduciary until his resignation from the Committee in September 2008; Thomas E. Helfrich, Executive Vice President and Chief Human Resource Officer of KeyCorp and Committee member and Plan fiduciary; and, Robert L. Morris,

3

Chief Accounting Officer of KeyCorp and a member of the Committee and Plan fiduciary. (ECF #22, ¶¶18-32)

Plaintiffs assert five claims in the Consolidated Complaint. In Count I, Plaintiffs allege that Defendants breached their fiduciary duties to the Plan, Plaintiffs, and other Participants, by failing prudently to manage the Plan's investment in KeyCorp securities by continuing to offer KeyCorp common stock as a Plan investment option when it was imprudent to do so and by maintaining the Plan's pre-existing heavy investment in KeyCorp equity when Company stock was no longer a prudent investment for the Plan. (ECF #22, ¶¶ 5, 196-206)

In Count II, Plaintiffs allege that Defendants failed adequately to inform Participants about the true risk and return characteristics of KeyCorp stock, including that the Company was overexposed to substantial mortgage related losses and other high risk loans including loans to residential real estate developers; that the Company had failed to adequately and timely record accruals for losses from its exposure to delinquent mortgages and future taxes; and, the Company's enormous market expansion, including homebuilder construction loans in Florida and California, which left it overexposed to losses as the mortgage and housing markets suffered extreme downturns. (ECF #22, ¶¶ 6, 208-220).

In Count III, Plaintiffs allege that certain Defendants (KeyCorp and Meyer) breached fiduciary duties by failing adequately to monitor other persons to whom management/administration of Plan assets was delegated, despite the fact that such Defendants knew or should have known that such other fiduciaries were imprudently allowing the Plan to continue offering KeyCorp stock as an investment option and investing Plan assets in KeyCorp stock when it was no longer prudent to do so. (ECF #22, ¶¶ 6, 222-232).

In Count IV, Plaintiffs allege that certain Defendants (all Defendants except Kathleen Egan), failed to avoid or ameliorate inherent conflicts of interests which crippled their ability to function as independent fiduciaries with only the Plan's and its Participants' best interests in mind. (ECF #22, ¶¶ 8, 234-239).

Finally, in Count V, Plaintiffs allege that certain Defendants (KeyCorp and Meyer) are responsible for the breaches of fiduciary duties committed by their co-fiduciaries under ERISA. (ECF #22, ¶¶ 9, 241-252).

Plaintiffs seek relief on behalf of the Plan, for losses to the Plan, for which Defendants are allegedly personally liable under ERISA as well as other relief including injunctive relief, constructive trust, restitution, other monetary relief, costs and attorneys' fees. (ECF #22, ¶¶256-261).

Defendants moved to dismiss the Consolidated Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs filed a Memorandum in Opposition and Defendants filed a Reply in Support. The Court held a hearing on the Motion on May 19, 2009, where all counsel presented argument on the Motion. The Court granted each side leave to file a supplemental brief. Defendants filed a Supplemental Brief in Support and Plaintiffs filed a Response to Defendants' Supplemental Brief. Thereafter, Defendants filed Notice of Additional Authority and Plaintiffs filed a Response to Defendants' Notice of Supplemental Authority. The Motion is now exhaustively briefed and ready for decision.

**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v.*

*Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940 (2009). *See also Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.)

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 570.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)*; Amini v. Oberlin College*, 259

6

F.3d 493, 502 (6th Cir. 2001). Public records include any materials subject to judicial notice, including securities filings made with the SEC and publicly available stock prices. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001).

## DISCUSSION

Defendants assert that Plaintiffs have failed to state a claim upon which relief may be granted in Counts I and II. Further, Defendants assert that Counts III, IV and V are derivative of Counts I and II and thus should be dismissed if Counts I and II are dismissed. Finally, Defendants assert that Kathleen Egan is not a proper defendant. The Court will address these claims in order.

**A. Count I: The Prudence Claim**

Plaintiffs allege that Defendants breached their fiduciary duties to the Plan, Plaintiffs and other Participants, by failing prudently and loyally to manage the Plan's investment in Company securities by continuing to offer KeyCorp common stock as a Plan investment option when it was imprudent to do so and by maintaining the Plan's pre-existing heavy investment in KeyCorp equity when Company stock was no longer a prudent investment for the Plan. See Consolidated Complaint, ¶5.

Plaintiffs admit that Key's 401(k) Plan includes the Corporation Stock Fund, which is an employee stock ownership plan ("ESOP"). The Sixth Circuit has defined an ESOP as follows:

> An ESOP is an ERISA plan that invests primarily in "qualifying employer securities ," which typically are shares of stock in the employer creating the plan. 29 U.S.C. § 1107(d)(6)(A). Congress envisioned that an ESOP would function both as "an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership." *Martin v. Feilen*, 965

7

> F.2d 660, 664 (8th Cir. 1992), *cert. denied*, 506 U.S. 1054, 113
> S.Ct. 979, 122 L.Ed.2d 133 (1993).  Because of these dual
> purposes, ESOPs are not designed to guarantee retirement benefits,
> and they place employee retirement assets at much greater risk
> than the typical diversified ERISA plan.  *Moench*, 62 F.3d at 568
> (quoting *Martin*, 965 F.2d at 664).

*Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995).  To further its goal of encouraging employee ownership of their employer company, Congress exempted ESOP fiduciaries from the ERISA duty to diversify the plan, thus, as a general rule, ESOP fiduciaries may not be held liable for failing to diversify investments, regardless of whether diversification would be prudent.  29 U.S.C. § 1104(a)(1)(C) and (2); *Kuper*, 66 F.3d at 1458.

Accordingly, Plaintiffs admit that their prudence claim is not that Defendants' breached their fiduciary duty by failing to diversify the Plan, but that they breached their fiduciary duty by permitting any participant to have the option of holding or investing in even one share of KeyCorp stock after December 31, 2006, when Key common stock was "an excessively risky vehicle for retirement savings".  (ECF #32 at p.4) Plaintiff's claim on its face is extremely difficult to establish given the fact that the express purpose of Key's ESOP, as supported by congressional policy, is to promote investment in Key stock.  In addition, the Sixth Circuit has adopted the Third Circuit's position announced in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995) which holds that the proper balance between the purpose of ERISA and the nature of ESOPs requires that courts review an ESOP fiduciary's decision to invest in employer securities for an abuse of discretion. *Kuper*, 66 F.3d at 1459.  Moreover, a court will presume that a fiduciary's decision to remain invested in employer securities was reasonable, however a plaintiff may rebut this presumption by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision. *Id*. However, ESOPs are still

8

governed by ERISA requirements for fiduciaries.[1]  *Id*.

Defendants further contend that Plaintiffs, in order to survive the motion to dismiss, must have alleged sufficient facts, that if true, would overcome the *Moench* presumption. Specifically, Defendants assert that Plaintiffs must have alleged extreme circumstances such as Key was no longer viable or that it could not weather the economic crisis in order to overcome the presumption and justify the drastic action of freezing investment in the Corporation Stock Fund and selling off every share of Key stock it held.

While Plaintiffs concede that they must overcome the *Moench* presumption at some later point in the litigation, they contend that at the motion to dismiss stage their allegations should only be subject to Rule 8(a)'s notice pleading standard.[2]  Several decisions in this Circuit, including three from this District, agree that the presumption of prudence should not be applied to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or if it is applied, the allegations necessary to rebut the presumption at this early stage would not be the drastic, extreme or impending collapse allegations suggested by Defendants.  See *In re Diebold ERISA Litigation*,

---

[1] ERISA imposes high standards of fiduciary duty upon those who administer an ERISA plan and invest and dispose of its assets.  29 U.S.C. § 1104(a)(1).  Fiduciary duties under ERISA encompass three components: (1) the duty of loyalty in which all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries; (2) the prudent man obligation which imposes an obligation to act both as a prudent person would act in a similar situation and with single-minded devotion to the plan participants and beneficiaries; and, (3) an ERISA fiduciary must act for the exclusive purpose of providing benefits to plan beneficiaries. *Kuper*, 66 F.3d at 1458.

[2] The Sixth Circuit has not spoken with respect to when the *Moench* presumption should be applied.  In *Kuper*, the Sixth Circuit applied the presumption on a motion for summary judgment.

2008 WL 2225712 at *8 (N.D. Ohio 2008); *In re AEP ERISA Litigation,* 327 F.Supp.2d 812, 828-29 (S.D. Ohio 2004)*; In re: Ferro Corporation ERISA Litigation*, 422 F. Supp.2d 850, 860 (N.D. Ohio 2006) (presumptions are generally considered evidentiary standards, not pleading requirements, although the Court found that the plaintiff alleged sufficient facts to overcome the *Moench* presumption, at least with respect to surviving a motion to dismiss); *In re the Goodyear Tire & Rubber Company ERISA Litigation*, 438 F.Supp.2d 783, 792-94 (N.D. Ohio 2006) (same–plaintiff need not plead that Goodyear was on the brink of collapse to overcome the presumption at the pleading stage. "*Moench* does not limit its holding to companies facing an 'impending collapse').

Other courts have applied the *Moench* presumption at the motion to dismiss stage and have found that plaintiffs failed to allege facts that would overcome the presumption. See *Wright v. Oregon Metallurgical Corp*., 360 F.3d 1090, 1098 (9th Cir. 2004); *Pugh v. Tribune Co.*, 521 F.3d 686, 701 (7th Cir. 2008); *In re Avon ERISA Litigation*, 2009 WL 848083, at *10 (S.D.N.Y. Mar. 3, 2009); *In re Ford Motor Co. ERISA Litigation*, 563 F.Supp.2d 681, 693 (W.D. Tex. 2008).  See also, *In re Huntington Bancshares Inc. ERISA Litigation*, 620 F.Supp.2d 842 (S.D. Ohio 2009) (motion to dismiss was granted in a stock drop case without mention of the *Moench* presumption as Court compared stock prices and public information and determined that ESOP fiduciaries acted with care, skill, prudence and diligence under prevailing circumstances.)

In this case, Plaintiffs have alleged facts supporting their assertion that Defendants' knew of Key's high-risk conduct which exposed it to extraordinary risks.  Plaintiffs further allege that Defendants' high risk conduct, as detailed in the extensive consolidated complaint, brought low a respected franchise, requiring a government bailout and a huge dividend reduction. While

10

Plaintiffs do not allege that Key was on the verge of failure, they do allege facts that if proven could rebut the *Moench* presumption and require a prudent fiduciary to have made different investment decisions.  Accordingly, at this point in the litigation, Defendants' Motion to Dismiss Plaintiffs' Prudence claim (Count I) is denied.

**B.  Count II: Failure to Disclose/Misrepresentation Claim**

In Count II of the Consolidated Complaint Plaintiffs allege that Defendants breached their fiduciary duties in violation of ERISA by "failing to provide Participants with complete and accurate information regarding (a) the Company's unduly high level of exposure to unsound investment practices; (b) the Company's improper tax treatment of LILOs and SILOs; (c) the consequent artificial inflation of the value of KeyCorp stock; and, generally, by conveying inaccurate information regarding the soundness of the Company's financial health and the prudence of investing retirement contributions in the Company stock." Consolidated Complaint, ¶214.  Plaintiffs contend that Defendants were acting as ERISA fiduciaries by disseminating Plan documents to participants and that the SPD incorporated by reference KeyCorp's filings with the SEC, rendering such filings fiduciary communications within the scope of ERISA. Consolidated Complaint, ¶¶209-210.  Further, Plaintiffs assert that had Defendants not constantly reinforced the safety and prudence of investment in KeyCorp stock during the class period, Participants, to the extent they were permitted, could have divested their holdings of Company stock in the Plan or at least diversified such holdings, thereby mitigating the Plan's losses. Consolidated Complaint, ¶215. Thus, Plaintiffs assert that Defendants breached their duty of loyalty under ERISA which required them to speak truthfully to Participants, not to mislead them regarding Plan assets and to disclose information Participants needed to exercise their

11

rights and interests under the Plan.  Consolidated Complaint, ¶¶211-212.  Plaintiffs conclude that Defendants' misrepresentations and omissions were material and as a result, the participant's reliance is presumed and that the Plan and the participants suffered a loss as a result of Defendants' breaches of fiduciary duty. Consolidated Complaint, ¶¶217-219.

Plaintiffs have alleged that Defendants both failed to disclose information and misrepresented the company's financial health in the SEC filings that were disseminated to the participants in various Plan documents.

Under ERISA, a fiduciary has an obligation to convey complete and accurate information to its beneficiaries. *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir. 2002). This duty to disclose "entails not only a negative duty not to misinform, but also an affirmative duty to inform when ...silence might be harmful." *Id.* (quoting *Bixler v. Centreal Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir. 1993)) see also *In re Ferro Corporation Erisa Litigation*, 422 F.Supp2d 850, 864 (N.D. Ohio 2006); *In re: the Goodyear Tire & Rubber Company Erisa Litigation*, 438 F.Supp.2d 783, 794 (N.D. Ohio 2006). However, the Sixth Circuit has limited disclosure claims to the detailed disclosure requirements set forth in ERISA noting that "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Sprague v. Gen'l Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998)(en banc). However, even if a company has no affirmative duty to disclose certain information under ERISA, once a fiduciary has provided such information, it must be accurate and complete. See *Pirelli*, 305 F.3d at 454-55; *In re AEP Erisa Litigation*, 327 F.Supp.2d 812, 832 (S.D. Ohio 2004).

Thus, Defendants assert that Plaintiffs' affirmative duty to disclose claim fails to state a claim because ERISA imposes no affirmative duty to disclose information related to the company's business practices, financial prospects or financial heath.  This issue has been addressed by Judge Manos in *In re Ferro Corporation Erisa Litigation*, 422 F.Supp2d 850 (N.D. Ohio 2006).  In *Ferro* the plaintiff alleged that the defendants breached their affirmative duty to inform by not disclosing the true financial condition of Ferro and breached their negative duty not to misinform by providing false information regarding Ferro's financial condition.  Ferro argued that there was  no affirmative duty to inform participants about accounting irregularities.  After reviewing relevant authority, Judge Manos determined that plaintiffs' allegation that defendants did not disclose the general risks involved in investing in Ferro stock was sufficient to state a claim for breach of the affirmative duty to disclose under ERISA at the motion to dismiss stage.  However, Judge Manos also found that defendants did not have an affirmative duty under ERISA to provide plaintiffs with non-public information regarding Ferro's financial condition, including the alleged accounting irregularities at issue there, as there is no provision in ERISA that requires such disclosure.

In this case Plaintiffs allege that Defendants failed to provide participants with complete and accurate information regarding the Company's allegedly high level of exposure to unsound investment practices; the Company's alleged improper tax treatment of LILOs and SILOs; and, the alleged consequent artificial inflation of the value of KeyCorp stock.  Plaintiffs do not point to any ERISA disclosure provision that would require Defendants to provide this information to participants.  Thus, Plaintiffs' claim that Defendants' violated the affirmative duty to disclose or provide information is limited to those specific disclosures required by ERISA.  The

13

Consolidated Complaint fails to identify, which, if any, of the information that it alleges that Defendants failed to disclose was a disclosure required by ERISA. That failure would require dismissal of the claim except that Plaintiffs also contend that Defendants voluntarily disclosed information that may not have been required to be disclosed under ERISA.  They further assert that those voluntary disclosures were inaccurate or incomplete and thus violate their fiduciary duties under ERISA.

Plaintiffs also claim that Defendants breached their fiduciary duty by misrepresenting the soundness of the Company's financial health and the prudence of investing retirement contributions in the Company stock.  To establish a claim for breach of fiduciary duty based on alleged misrepresentations, a plaintiff must show that: (1) defendant was acting in a fiduciary capacity when it made the challenged statements; (2) the statements constituted material misrepresentations; and (3) plaintiff relied on them to his detriment. *In re Huntington Banchsares Inc. Erisa Litigation*, 620 F.Supp.2d 842, 854 (S.D. Ohio 2009) (citations omitted.).

Defendants contend that Plaintiffs' claim that Key misrepresented material facts appears to be based only on statements contained in Key's SEC filings. Defendants further assert that Key's SEC filings are not fiduciary communications subject to scrutiny under ERISA. Accordingly, Defendants assert that Plaintiffs have failed to establish the first element of their claim for breach of fiduciary duty based on misrepresentations.

Two courts within this District disagree with Defendants' position and have held that incorporating securities filings into plan documents is a fiduciary act.  *In re Ferro*, 422 F.Supp.2d at 865; *In re Goodyear*, 438 F.Supp.2d at 195.  In *Ferro*, Judge Manos held that any misrepresentations contained in the SEC filings that were incorporated into plan documents

14

and/or disseminated to plan participants are actionable under ERISA. Therefore, the court found that plaintiffs who allege that Defendants "breached their fiduciary duties not to misinform by incorporating false SEC filings into plan documents...ha[ve] alleged a cause of action upon which relief may be granted." *In re Ferro*, 422 F.Supp.2d at 865; *In re Goodyear*, 438 F.Supp.2d at 795 (same). However, other courts have determined that SEC filings are made in a corporate capacity and not in an ERISA fiduciary capacity and that the preparers of the SEC filings do not become ERISA fiduciaries and violate ERISA if those filings contain misrepresentations. See *Shirk v. Fifth Third Bancorp,* 2009 WL 692124 at *17 (S.D. Ohio 2009) citing *Kirshbaum v. Reliant Energy Inc*., 526 F.3d 243, 257 (5th Cir. 2008). The Sixth Circuit has not yet addressed this issue. Until that time, the Court finds that since it is universally accepted that ERISA fiduciaries are liable for making misrepresentations in plan documents, they should also be prohibited from incorporating into plan documents other documents that make material misrepresentations about the company and then disseminating those misrepresentations to plan participants. Thus, in accordance with the findings in *In re Ferro* and *In re Goodyear*, Plaintiffs have stated a claim when they alleged that Defendants' breached their fiduciary duties not to misinform by incorporating false SEC filings into plan documents.

Next, Defendants argue that Plaintiffs have failed to state a claim in Count II because they fail to identify a single material fact that Key misrepresented or concealed. While Plaintiffs' allegations are long on conclusion and relatively light on specific allegations of fact, the Consolidated Complaint does identify the types of facts that Plaintiffs allege that Defendants failed to disclose or misrepresented. See Consolidated Complaint, ¶214. In its Motion to Dismiss, Defendants set out the disclosures in the SEC filings that it claims Plaintiffs claim were

15

misleading and challenged Plaintiffs to explain how the disclosures were inaccurate or incomplete.  Plaintiffs declined to address each disclosure contending that this is a fact based analysis that must occur after discovery.  While the standard of review on a motion to dismiss has been raised since *Twombley,* the standard is still not that difficult to surpass.  A close review of the factual allegations alleged in the lengthy Consolidated Complaint has convinced the Court that Plaintiffs' claim in Count II is plausible.

Finally, Defendants seek to dismiss Count II on the efficient market theory–that an earlier disclosure of Key's problems would not have prevented Plaintiffs' losses but would only have caused them to occur earlier. As Judge Manos noted in *Ferro,* the efficient market defense is inappropriate at the motion to dismiss stage because "whether [Plaintiffs' alleged] losses would have been more or less significant [upon disclosure of the undisclosed information] is a speculative issue inappropriate for resolution at this early stage of the litigation." 422 F.Supp.2d at 863.  Defendants' Motion to Dismiss Plaintiffs' disclosure/misrepresentation claim (Count II) is denied.[3]

**C.  Motion to Dismiss Kathleen Egan**

Defendants assert that Kathleen Egan was included as a Defendant in this case only because she signed certain Plan documents as a representative of Key. However in the Consolidated Complaint, Plaintiffs allege that Kathleen Egan is a Plan fiduciary and that she exercised discretionary authority with respect to management and administration of the Plan and/or the management and disposition of the Plan's assets. Consolidated Complaint, ¶24.

---

[3] Defendants' Motion to Dismiss Counts III, IV and V as derivative of Counts I and II is denied as Counts I and II have not been dismissed.

16

Plaintiffs further allege that the Plan fiduciaries breached their fiduciary duties to Plaintiffs. Accordingly, Plaintiffs have asserted claims against Ms. Egan that will require further discovery and investigation.  Accordingly, Defendants' Motion to Dismiss Kathleen Egan is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the Consolidated Complaint (ECF #23) is denied.  A status conference is hereby set for December 8, 2009 at 10:00 a.m. in Chambers 15A.

IT IS SO ORDERED.

    _/s/Donald C. Nugent_
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:  November 23, 2009