UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANN I. TAYLOR, *et al.*, | ) | Case No. 1:08 CV 1927 |
| | ) | |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| KEYCORP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiffs' Motion for Class Certification (ECF #41) and Defendant's Rule 12(b)(1) Motion to Dismiss the Complaint for lack of standing. (ECF #48). For the reasons that follow, Defendants' Motion to Dismiss is granted and Plaintiffs' Motion for Class Certification is denied as moot.

**PROCEDURAL BACKGROUND**

Plaintiffs have filed a Motion for Class Certification. (ECF #41) In response, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) in addition to their Opposition to Plaintiffs' Motion for Class Certification. (ECF #48) In their Motion to Dismiss Defendants argue that neither Plaintiff Ann Taylor nor Plaintiff Elaine Klamert has standing to prosecute the claims asserted in the Amended Complaint, thus the Amended Complaint should be dismissed. In the addition, Defendants assert that even if Plaintiffs' claims are not dismissed for lack of standing, Plaintiffs are not adequate class representatives and that the requirements of

Fed. R. Civ. P. 23(a) and (b) have not been met.[1]

The consolidated complaint (hereinafter the "amended complaint") was filed on January 16, 2009, naming as plaintiffs and proposed class representatives Ann I. Taylor and Elaine Klamert.  The proposed class is defined as "[a]ll persons who were participants in or beneficiaries of the Plan whose Plan accounts included investments in KeyCorp common stock...at any time between December 31, 2006 and the present...." (ECF #22 at ¶40).  The "Plan" refers to the Keycorp 401(k) Savings Plan.  The Plan is a participant-directed, defined contribution plan. (ECF #22 at ¶47, Summary Plan Description ("SPD") at 13).  Plan participants have discretion and responsibility for the investment decisions in their own individual accounts. (Id.)  The Plan offers fourteen different investment options for participants to invest their funds. (SPD 10-13).  Plaintiffs complain only about one of the investment options in this action–the KeyCorp Common Stock Fund (the Key stock fund"). (ECF #22 ¶49) Participants may invest their own funds in the Key stock fund and Key also offers matching contributions in the Key stock fund to participants with at least one year of employment. (ECF #22 at ¶54, ¶51).

Plaintiffs' claims are in the main part predicated on their repeated allegation that the price of Key stock was artificially inflated from December 31, 2006, to the present. (See ECF #22 at ¶¶ 35, 58, 148, 168, 184, 203, 214, 246, 248, 254) Based on this allegation, Plaintiffs claim Key[2]

---

[1] While Plaintiffs' Motion for Class Certification includes Ms. Klamert as a proposed class representative, in their opposition to Defendants' Motion to Dismiss, they admit that Ms. Klamert ignored Defendants' discovery requests and assert that she is not being offered as a class representative.  Indeed, Defendants have shown that Ms. Klamert never owned a share of Key stock.  Accordingly, Defendants' Motion to Dismiss for lack of standing is granted without opposition as to Plaintiff Elaine Klamert.

[2] The defendants named in the Amended Complaint are KeyCorp, KeyCorp Trust Oversight Committee, and various Key officers, directors and employees including

breached their fiduciary duties to the Plan, Plaintiffs and members of the proposed class under the Employee Retirement and Income Security Act of 1974 ("ERISA") by allowing any Plan participant to own even one share of Key stock as of December 31, 2006 (the "Prudence"claim, Count 1). (ECF #22 at ¶¶203-04) Plaintiffs also contend that Key failed to provide Plan participants with complete and accurate information regarding the risks in its business, which induced participants to purchase and hold Key stock (the "Misrepresentation" claim, Count 2). (ECF #22 ¶¶214-15).[3]

Defendants assert that Plaintiff Ann Taylor lacks standing because she has not suffered an injury "that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores,* 129 S.Ct. 2579, 2592 (2009).  Accordingly, Defendants contend that this case should be dismissed under Fed. R. Civ. P. 12(b)(1).  Defendants' Motion to Dismiss will be addressed first as a favorable ruling on this motion will make Plaintiffs' Motion for Class Certification moot.

## STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) asserts that the Court lacks subject matter jurisdiction over the action at bar.  The Sixth Circuit has adopted two standards of dismissal under Rule 12(b)(1), depending upon whether the movant makes a facial or factual attack on the plaintiff's complaint. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320,

---

Henry L. Meyer, III, Kathleen Egan, Thomas C. Stevens, Jeffrey B. Weeden, Thomas W. Bunn, Thomas E. Helfrich and Robert L. Morris.  For the purpose of this Opinion, the defendants will be referred to collectively as "Key".

[3]

Defendants assert, and Plaintiffs do not deny, that Plaintiffs three remaining claims rise or fall with their Prudence and Misrepresentation claims.  Accordingly, only Counts 1 and 2 of the Amended Complaint will be addressed in regard to the Motions at issue.

325 (6th Cir.1990). A facial attack merely questions the sufficiency of the pleadings. In reviewing a facial attack, the court shall apply the same standard applicable to Rule 12(b)(6) motions. See, *U.S. v. Ritchie*, 15 F.3d. 592, 598 (6th Cir. 1994); *Cooley v. United States*, 791 F.Supp. 1294 (E.D.Tenn. 1992); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). On the other hand, where a district court reviews a plaintiff's complaint under a factual attack, the court does not presume that the plaintiff's allegations are true. In such cases, the court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See id.; see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.,* 24 F.Supp.2d 808, 812-13 (M.D.Tenn.1998).

Where a defendant challenges "the actual existence of the Court's jurisdiction over the matter," the defendant is making a 12(b)(1) "factual attack" on the Court's subject matter jurisdiction. *Dalton v. Jefferson Smurfit Corp.,* 979 F.Supp. 1187, 1193 (S.D.Ohio 1997). In resolving a factual attack under Rule 12(b)(1), "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdiction claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). Thus, a court may examine evidence outside of the pleadings in order to determine whether it has jurisdiction to hear a certain case. *See Dalton*, 979 F.Supp. at 1193; *see also Morrison v. Circuit City Stores, Inc*., 70 F.Supp.2d 815, 819 (S.D.Ohio 1999) ("[A] court may consider any evidence properly before it when a defendant factually attacks subject matter jurisdiction under Rule 12(b)(1)."). Defendants' Motion to Dismiss for lack of standing in this instance has been made following discovery on the class issues and is supported by depositions and declarations outside of the pleadings and thus asserts

a factual attack rather than a facial attack on Plaintiffs' Amended Complaint. In weighing the evidence, this Court has broad discretion to consider affidavits and documents outside the Amended Complaint.

## DISCUSSION

Defendants assert that Ms. Taylor sold all of her Key stock during the class period of "artificial inflation" and made a tidy profit. Thus, as someone who benefitted from the alleged breach, Ms. Taylor cannot be a part of the class, let alone its representative.

Defendants note that the actual records of Ms. Taylor's Plan account show that as of December 31, 2006, the beginning of the class period, she owned 1,678.32 units of the Key stock fund. Ms. Taylor sold all of those units on January 11, 2007, when Key stock was trading at over $37 per share. Key stock reached its peak price of $39.90 per share on February 22, 2007. Following her sale of Key stock in January, 2007, Ms. Taylor never purchased another unit in the Key stock fund. She did acquire an additional 387.31 units in Key stock through Key's matching program. On February 22, 2008, she sold 268.01 of those units and sold the remainder of her 119.30 units of Key stock fund on June 25, 2008. Overall, Ms. Taylor sold her Key stock for more money than she actually paid for it, earning a net profit of $6,317.

During her deposition Ms. Taylor acknowledged that a person who sold Key stock during the class period would have received more than the stock was worth and that such person would not have been damaged by that transaction. (Taylor Depo. pp. 75-76) Ms. Taylor further agreed that she was a representative for the people who suffered damages as a result of their investments in Key stock during the class period and was not a representative for the people who benefitted

5

from what she considered to be the artificial inflation in Key stock during the class period. (Id. at pp. 82-83). Ms. Taylor also testified that it was not her idea to bring this action over her Plan account, rather, she received an unsolicited phone call from Major Khan, one of the attorneys who now represents her in this case. (Id. at pp. 20-22, 33-34, 50-51)

The plaintiff, as the party invoking federal subject matter jurisdiction, has the burden to show that all of the requirements necessary to establish standing to bring the lawsuit have been met. *Dismas Charities, Inc. v. United States Dep't of Justice*, 401 F.3d 666, 671 (6th Cir. 2005); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Article III of the United States Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To satisfy this "case-or-controversy" requirement, "a plaintiff must establish three elements: (1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue-the injury must be fairly traceable to the defendant's action; and (3)[a] likelihood that the injury would be redressed by a favorable decision of the Court." *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) citing *Blachy v. Butcher,* 221 F.3d 896, 909 (6th Cir.2000) (internal quotation marks omitted); *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130 (noting that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement"). Moreover, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (citations omitted).

Defendants contend that Ms. Taylor cannot show injury in fact because she sold far more Key stock at allegedly inflated prices during the alleged class period than she received. Further,

Ms. Taylor did not contribute her own funds to the Key stock fund during the class period.  The only units of the Key stock fund that she received during that period she received through Key's matching program.  As someone who benefitted from Defendants' alleged breaches, Ms. Taylor has not been damaged. Defendants likened this situation to other "stock-drop" ERISA cases where courts have held that plaintiffs who benefitted from the artificial inflation of stock prices do not have standing to sue.  *See In re Boston Scientific Corp. ERISA Litig.*, 254 F.R.D. 24 (D.Mass. 2008); *Brown v. Medtronic, Inc.*, 619 F.Supp.2d 646 (D. Minn. 2009); *Vermeylen v. ProQuest Co.*, 2007 WL 1218713 (E.D. Mich. April 23, 2007).  These cases, like the case at bar, involved claims that the employers' stock was artificially inflated.  The cases were brought by plaintiffs who sold more stock than they purchased during the alleged class periods. In each case the courts concluded that the plaintiffs benefitted from the artificial inflation of the stock and actually made money because of the defendants' alleged wrongful conduct.  The traditional measure of damages for artificial inflation claims, sometimes referred to as "out-of pocket" damages, is the difference between what the plaintiff paid for the stock and what it was really worth.  *See Stone v. Kirk*, 8 F.3d 1079, 1092 (6th Cir. 1993).  If this traditional measure of damages is applied in this case, Ms. Taylor would have no standing to sue because she clearly would have benefitted from the alleged misconduct by Defendants given that she sold all of her shares of Key stock during the period of alleged artificial inflation.

     Plaintiffs counter that the traditional, out-of-pocket measure of damages does not apply in this instance and that the Court should employ an "alternative investment" damages model which measures losses to a plan from breaches of the duty of prudence by comparing the performance of the imprudent investments with the performance of a prudently invested

portfolio. *See Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008).

While Plaintiffs assert a "prudence" claim, the gravamen of that claim is that it was imprudent for Key to "offer KeyCorp common stock as Plan investment options, when the market prices of KeyCorp common stock was artificially inflated." (Amended Complaint, ¶35) Plaintiffs also assert that as a result of various other actions taken by Key, KeyCorp's earnings were overstated and its stock price was "artificially inflated." (See Amended Complaint, ¶¶ 58, 148, 184) "During the Class Period the market price of KeyCorp common stock was artificially inflated due to the concealment of KeyCorp's true financial and operating condition ..." (Id. at ¶58) Thus, it would seem that the core of Plaintiffs' prudence claim is that it was imprudent for Plan fiduciaries to permit Plan participants from owning even one share of Key common stock when it was trading at nearly its peak levels at the beginning of the class period at issue, because the stock was artificially inflated and the Plan fiduciaries knew or should have known that the stock was artificially inflated. Indeed, Plaintiffs made this argument in its opposition to Defendants' earlier Rule 12(b)(6) motion to dismiss Plaintiffs' prudence claim.   (See ECF #28 at 14).  The Court finds that Plaintiffs' claims are based upon their theory that Key stock was artificially inflated for a variety of reasons giving rise to their prudence and misrepresentation claims.

Accordingly, the proper measure of damages in an "artificial inflation" case is "out-of-pocket" damages, *i.e.*, the difference between what the plaintiff paid for the stock and what it was really worth. *See Stone v. Kirk*, 8 F.3d at 1092; *Donovan v. Bierwith*, 754 F.2d 1049, 1055 (2d Cir. 1985) (alternative investment damages model has no application where plaintiffs allege that "they bought stock "too dearly" because stock price was artificially inflated because

8

information that would affect the market price was improperly withheld.) In these types of cases, plaintiffs who benefit from the alleged artificial inflation of a security do not have standing to sue over it, regardless of how their claim is pled. *See In re Boston Scientific Corp. ERISA Litig.*, 254 F.R.D. at 30; *Medtronic*, 619 F. Supp.2d at 650; *Vermeylen*, 2007 WL 1218713 at *5.

Moreover, the fact that Ms. Taylor received approximately 400 units of Key stock as part of the matching program during the class period does not negate the fact that overall she profited from her sales of key stock during the class period. In both *Boston Scientific* and *Medtronic*, the plaintiffs acquired some company stock during the proposed class period, but sold significantly more allegedly inflated shares than they had bought. Both courts determined that the small acquisitions of company stock did not alter the standing analysis when they were dwarfed by the large sales of allegedly inflated company shares made by each plaintiff during the class period. Overall, the plaintiffs enjoyed significant profits from the sale of company stock during the class period. *See Boston Scientific*, 254 F.R.D. at 31; *Medtronic*, 619 F.Supp.2d at 650. Similarly, Ms. Taylor made a significant profit when she sold all of her shares in KeyCorp during the proposed class period. Ms. Taylor has suffered no injury and thus does not have standing to bring the claims at bar.[4]

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss pursuant to Fed. R. Civ.

---

[4] Having determined that the only remaining named plaintiff Ann Taylor lacks standing to bring the claims at issue, Plaintiffs' Motion for Class Certification is necessarily moot.

9

P. 12(b)(1) is GRANTED.  Plaintiffs' Motion for Class Certification is DENIED AS MOOT.

IT IS SO ORDERED.

                                      *Donald C. Nugent*
                                      DONALD C. NUGENT
                                      UNITED STATES DISTRICT JUDGE

DATED:  August 12, 2010